Thornton *vs.* Chisholm.

---

No. 57.—JOHN THORNTON, plaintiff in error, *vs.* WILLIAM A. CHISHOLM, defendant.

[1.] J T made an instrument by which he declared that he manumitted certain named slaves ; that these were in his possession, and were to remain, during his natural life, subject to his control and direction ; that he granted them, after his death, to his trusty friends, E G T and W A C, for this purpose : that is to say, to remove them to some free State or to the State of Liberia, according to their discretion, and that the trustees were to apply the whole of his property to the execution of this purpose : *Held,* that if the instrument was a will, it was void, as it had only two witnesses; and that if it was a deed, it was void by the Acts of 1801 and 1818, on the subject of emancipation.

In Equity. Muscogee. Tried before Judge WORRILL, May Term, 1856.

William A. Chisholm filed his bill in Equity, alleging that he was the trustee of Isaac Thornton of said county, now deceased, to execute certain trusts specified in a deed, the object of which was to emancipate certain slaves, of which the following is a copy :

"THE STATE OF GEORGIA, MUSCOGEE COUNTY:
Know all men by these presents, that I, Isaac Thornton, from motives of benevolence and humanity, have manumitted and set free, and by these presents do hereby manumit and set free from bondage or slavery, Jane, a woman about twenty-seven years, of dark complexion and small stature, and

Sarah Frances, her daughter, about thirteen years of age, of yellow complexion; and John, a boy, son of Jane, about one year and six months old; and Amanda, a woman about nineteen years old, of yellow complexion; and her daughter Josephine, about five years old, of yellow [complexion; and her son Jacob, about three and a half years old; and her daughter, Mary Elizabeth, very white complexion, about one year and six months old; all of said named slaves now in my possession, and to remain, during my natural life, subject to my control and direction; after which I do hereby grant and release unto my trusty friends, Edwin G. Thornton and William A. Chisholm, my chosen trustees, for the following purposes: All of said slaves, with each and all their natural increase, born of their bodies or that of their children, after this date and henceforward; that is to say, to remove said slaves to some free State or to the State of Liberia, on the coast of Africa, according to their discretion; and that my trustees shall, immediately after my death, take possession of all my property, both real and personal, and choses in action, for the purpose of carrying out the trust herein created; that is to say, to pay the expenses of transportation or passage to their destination; and all monies or effects of mine in the hands of my trustees, remaining after paying said expenses, to be given and appropriated by my said trustees to said named slaves, for their support, use and maintenance.

In testimony whereof, I have hereunto set my hand and seal, this the twenty-seventh day of March, 1855.

ISAAC THORNTON, [L.S.]

In presence of—
BEVERLY A. THORNTON,
WILEY ADAMS."

It is further alleged, that a few days after the execution of this instrument, Isaac Thornton died, and that the complainant, Chisholm, then took the property in hand with a view to perform the said trusts, his co-trustee refusing to act; that said Isaac Thornton died, leaving neither wife nor law-

ful children, and that John Thornton is the brother and only surviving next of kin of the deceased; that the said Isaac died intestate and out of debt; that he was the father of the children mentioned in the deed; that said John Thornton claimed said property as next of kin, and waived an administration of said estate.

Prayer for direction, &c.

The answer filed admitted most of the facts, but denied that the deceased was the father of said children, and averred the deed to be void, &c.

Upon the trial the introduction of the deed in evidence was objected to by defendant's Counsel. The Court over-ruled the objection, allowed it to be read, and charged the Jury, that "said instrument read in evidence was a good deed of emancipation, and authorized said trustee to execute the trusts in it." To which charge and ruling defendant excepted.

A. McDougald; Johnson & Sloan, for plaintiff in error.

Ingram; Crawford; Russell; Thornton, for defendant.

By the Court.—Benning, J. delivering the opinion.

The instrument was either a will or a deed.

[1.] If it was a will it was void, because it did not have three witnesses to it. (*Acts of* 1851–'2, 104.)

And if it was a deed, it was void by the Acts of 1801 and 1818, relating to manumission. (*Cobb's Dig.* 983, 989.)

For if it was a deed, (and valid,) the effect of it would have been to make the negroes belong to Thornton for his life, and to themselves afterwards; that is, to make them become free afterwards. In other words, they would have assumed a condition, in part, that of slaves—in part, that of free persons of color; and this latter part would have been constantly growing to be the whole. Every successive moment after the execution of the deed, would have brought the negroes

nearer and nearer to the confines of freedom. An hour before Thornton's death, they would have got within an hour of liberty. As he died, they would just reach there.

And during the whole term of this condition—a condition to last whilst Thornton's life lasted—they would or might have been residents of the State, seated in the midst of its slave population.

Is it not plain that evils would result from putting slaves in such a condition—the same in kind as those that would result from putting them in a condition of entire freedom? The evils might be a little less in degree; we think that this would be all the difference. And as the case of the deed, if it had conferred entire freedom, would, beyond dispute, be within the words of the Acts aforesaid, the case of this deed, conferring, as it does, partial freedom, must be considered as at least within the reason of the Acts. The difference between the two cases is not sufficient to take the latter out of the reason of the Acts.

And none of the decisions made by this Court have gone so far as to say that the creation of such a state of things, is not forbidden by the Acts aforesaid. In all of the cases in which those decisions were made, the slaves, as soon as their rights *vested*, were to be removed beyond the limits of the State.

These, I think, are, in brief, the views of Judge LUMPKIN on the question, whether this instrument falls within the Acts aforesaid or not.

I think that the instrument is both within the *letter* and the spirit of the Acts. My reason for this opinion may be seen by referring to my dissenting opinion in the *Bledsoe Will cases*, decided at Milledgeville in May, 1855.