# CASES

## ARGUED AND DETERMINED IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT MILLEDGEVILLE, NOVEMBER TERM, 1857.

Present—JOSEPH H. LUMPKIN,
CHARLES J. McDONALD, } Judges.
HENRY L. BENNING,

---

CHARLES A. C. PORTER, plaintiff in error, *vs.* FRANCIS THOMAS, executor of Mary Jones, deceased, defendant in error.

[1.] Trover may be sustained against an overseer for slaves in his possession.

[2.] By the words "I will and bequeath to my beloved wife, Mary, all my property, both real and personal to be at her control during her natural life;" an estate for life is created in the wife, which is not enlarged into a fee by the words which follow, "I further will and request, she makes such disposition of it as she thinks best."

[3.] The last words quoted give a power of appointment by will and not by deed.

Trover, in Laurens Superior Court. Tried before Judge LOVE, October, Term, 1857.

Trover by Francis Thomas, executor of the last will and testament of Mary Jones, deceased, against Charles A. C. Porter, for seventy-eight negroes.

Pleas: The general issue, and that defendant was in possession of said slaves only as the overseer of James V. Jones, Joseph B. Jones, Henry W. Jones, and William B. Jones, executors of Henry P. Jones, deceased, to whom the property belonged at the time of his death. That said negroes were in fact in the possession of said executors, and that de-

fendant was subject to their direction, and authority in the management of said property, and that otherwise the same was never in his possession, &c.

John Fulwood of the county of Laurens, died about 1829, leaving a will by which he disposed of his whole estate, as follows:

"I will and bequeath to my beloved wife, Mary Fulwood, all my property, both real and personal, to be at her control during her natural life. I further will and request that at her death she makes such disposition of it as she may think best."

The widow of John Fulwood afterwards intermarried with Henry P. Jones, who died in 1853, leaving her surviving.

Henry P. Jones duly made and executed his last will and testament, which after his death was proved and admitted to record.

On the 17th November, 1853, shortly after the death of Henry P. Jones, Mary Jones his widow, executed and delivered to Joseph B. Jones, Wm. B. Jones, James V. Jones and Henry W. Jones, an instrument under seal, by which, after referring to a power of appointment in the will of her first husband, John Fulwood, she conveyed to said parties all the lands and negroes and property of every kind, of which Henry P. Jones her late husband, became possessed by virtue of his marriage with her, and which she claimed the power to dispose of by virtue of the will of her first husband, John Fulwood (not including a plantation which she had previously given to her grand-son, John Thomas Fulwood,) in trust for her use during her life, as specified in the will of the said Henry P. Jones, and at her death to be disposed of and vest as in said will of Henry P. Jones, is mentioned and provided: and if it should turn out that said Henry P. Jones made no will, then in trust after her death, to the heirs at

law of said Henry P. Jones, agreeably to the statute of distributions of this State.

Afterwards on the 11th July, 1856, said Mary Jones, executed her last will and testament, by which she devised and bequeathed the same property to her executors, in trust for her grand-son, John Thomas Fulwood, and shortly thereafter died. The plaintiff, Francis Thomas, was the only person named as executor, who qualified. The negroes were in the county of Laurens, employed on the land under charge of the overseer, Charles A. C. Porter, the defendant. The executors of Henry P. Jones, resided in the county of Burke.

Francis Thomas, the executor of Mrs. Mary Jones, brought this action of trover against the overseer on the plantation in Laurens county. Affidavit was made, and under the provisions of the Act of 1821, the defendant entered into bond for the forth-coming of the negroes.

Upon the trial, on the appeal, the plaintiff offered in evidence the will of John Fulwood, deceased. Also the will of Mary Jones, formerly Mary Fulwood. He then proved that defendant was the overseer of the executors of Henry P. Jones, and that they all resided in the county of Burke, the value of the negroes, demand and refusal, and closed.

Defendant introduced the deed executed by Mary Jones, and the will of Henry P. Jones deceased, and closed.

The Court charged the jury:

1st. That the action was rightly brought against the defendant, who was the overseer on the plantation, and had charge of the negroes as overseer of the executors of Henry P. Jones, deceased; and that plaintiff had as much right to sue him, though he was only overseer as to sue the executors who were the real owners.

2d. The Court after reading to the jury the case of Hollingshead vs. Alston, ( Ga. Reports, ) charged them that the Supreme Court had in that case determined this case;

32

that they were in substance the same, and that the clause in the will under consideration in the case of *Hollingshead vs. Alston*, was the same in substance, as the clause in the will of John Fulwood, and that Mrs. Jones had no power to make the deed under which defendant claimed.

3d. The Court further charged, that Mrs. Jones had not the power to alienate the property during her life, and any deed executed by her alienating the same was void, and her only power of disposition, under that will of John Fulwood, was by will.

4th. The Court further charged the jury, that the particular character of the estate which Mrs. Jones took under the will of her first husband, John Fulwood, was not important in the determination of this case; for whether she took a life estate with the power of appointment or a separate fee coupled with power, both parties claimed under and by virtue of what they considered an execution of the power. That the controlling legal question in the case, was, as to when or how the power could be executed. The opinion of the Court was that the widow of John Fulwood was restrained by his will from *alienating* the property during her natural life, that any deed she might make would be an alienation during life, and that consequently the only mode in which she could dispose of it, was by will.

The Court refused to give in charge to the jury the requests made by defendants counsel.

To all of which charge and refusal to charge, counsel for defendant excepted.

The jury found for the plaintiff forty-six thousand nine hundred dollars, to be satisfied and discharged by the delivery of the negroes within twenty-five days; and five thousand seven hundred and one dollars and twenty-five cents, for the hire, to be paid in money.

Whereupon counsel for defendant tender their bill of ex-

ceptions, and assign as error the charges and refusals to charge, herein excepted to.

I. .L HARRIS and W. S. ROCKWELL, for plaintiffs in error.

A. H. CHAPPELL, for defendant in error.

*By the Court*—McDONALD, J. delivering the opinion.

[1.] The first assignment of error presented in the record, is on the charge of the presiding Judge in the Court below, that this action was rightly brought against the defendant who was the overseer of the executors of the will of Henry P. Jones, and in that capacity had charge of the slaves sued for.

The gist of the action of trover is the wrongful conversion of the property of the plaintiff by the defendant. The wrongful defention of the property is a conversion, and, in a tortious act, all are principals and equally liable. A servant may be charged in trover though the conversion be done by him, however innocently, for the benefit of his master; and it is immaterial whether he had his master's authority or not. *Leigh's nisi. prius* 1480.    *Stephens vs. Elwall,* 4. *M. & S.* 259.

The other points made in the record before us, depend entirely on the construction of John Fulwood's will.

[2.] What estate did his wife Mary Fulwood take under the will? If a life estate with the power of appointment as to the reversion, was the instrument of writing executed by her to Joseph B. Jones, William B. Jones, James V. Jones, and Henry W. Jones, a good execution of that power? If not was her will, subsequently made, a good execution of it?

We think that the testator limited the interest that his wife should take in his property to an estate for life. The words of the will are "I will and bequeath to my beloved wife, Mary, all my property, both real and personal, to be at her control during her natural life." This clause of the will cannot, taken alone, vest a fee simple estate in Mrs. Fulwood,

under our statute, because a less estate is mentioned and limited in the bequest or devise. The word, "control," cannot mean that she shall have an absolute fee simple, the power of sale, so as to pass a fee during her natural life. It cannot be used in a different sense from its usual signification and import. The testator, it is manifest, did not use it in any other sense. He intended that she should have authority over it, the management, superintendence and use of it during her natural life. The subsequent part of that clause cannot enlarge the life estate into a fee simple. "I further will and request, that, at her death, she makes such a disposition of it as she thinks best." Here, then, the testator gives to Mrs. Fulwood an estate for life only, with power, at her death to make such a disposition of the reversion as she might think best: It is too well established to admit now, of a question, under these circumstances, that she could not take a fee in the property. *Jackson vs. Robus*, 16. *Johns. Rep.* 588. *Tomlinson vs. Dighton*, 1. *Peer Williams* 149. The instrument executed by Mrs. Fulwood to the defendant's employers, and by him given in evidence, recites that Mrs. Jones, (Mrs. Fulwood,) had the power to dispose of the property according to the will of John Fulwood.

[3.] Was that instrument a good execution of the power given in John Fulwood's will? The language used by the testator is, " I further will and request, that at her death," (Mary Fulwood's death,) "she makes such a disposition of it as she thinks best." The power is not created by precatory words merely. The testator expresses himself strongly. He " *wills* and requests." The time is also designated by the testator at which the power is to be executed. "At her death," the period at which many persons make their wills. He wills that, " at her death, she makes such a disposition of it as she may think best." The common sense as well as legal interpretation of this sentence is, that she should dispose of the property by will. The word "it," in this sentence, relates to the property of the testator both real and personal; and can-

not be made to apply as insisted in the argument, to the life estate given to Mrs. Fulwood, without imputing to the testator the extreme folly of directing the donee of the power, to dispose of an interest that must necessarily cease to exist at the very moment, that the instrument by which it is conveyed must take effect, if it could take effect at all.

In this aspect of the case, it is scarcely necessary to consider whether the instrument executed to the Joneses was a good execution of the power. If it be a deed, it was not a good execution of a power which could be executed by will alone. If a will, it was subject to be superseded by a subsequent repugnant will. We will not therefore consider, whether if there had been no subsequent disposition by will, made by her of the property, the appointment by that instrument would have been a valid execution of the power.

We repeat, that if the instrument should be construed as a deed, it is not a good execution of the power; and if a will, it was revocable and was revoked by the will subsequently executed. Under that last will, the plaintiff claims and was entitled to recover.

Judgment affirmed.