## TOOMBS *v.* SPRATLIN.

1. A will contained the following items: (2) "I wish all of my property kept together and used as I have used the same, during the life of my wife, she to have the privilege, with the consent of my executors, of giving off to my children, as they become of age or marry, such parts as she and they may select, to be accounted for in the final division, as shall be also what I have given heretofore to any of my children." (3) "At the death of my wife, I wish my property to be equally divided among my children." (4) "I wish my youngest children, not educated, out of the proceeds of my property kept together as above described, to be educated in a plain and substantial manner, and the same not to be charged to them." (5) "If any of my children die without leaving children, I wish the share given to them by this will to revert to my other children." (7) "In the event of my wife marrying, I wish her to have an equal share of my estate set off to her, which shall at her death revert to my children under the above limitations." Prior to his death the testator had used the property of his estate cultivated as a plantation for the support of himself and his family who resided with him; two of

his children having married and moved off before his death. *Held*, that the will created an estate during the life of the widow, with the title held by the executors, and with the direction that the property should be cultivated as a plantation for the support of the family living upon it.

2. The remainder estate created was a vested legal estate.

3. When it appeared from an agreed statement of facts that the estate was kept together by the executor who qualified, from the testator's death in 1861 till November, 1866, "and used as directed in items two and four of the testator's will;" and it also appeared, from a petition filed by him in 1866, that the widow was living on the place during the time mentioned, "under the will," this was sufficient to show the assent of the executor to the legacy.

4. Assent to the life-estate or use operated as an assent to the remainder also.

5. Where, after the assent of the executor to the legacy, the widow elected to take dower instead of her legacy, this destroyed any interest on her part in the land under the will, but did not destroy the interest of the children, either in the life-estate or the remainder, nor did it undo the assent of the executor as to them.

6. In order for a remainder to be accelerated by reason of the termination of the particular estate for life before the death of the life-tenant, there must be a termination of the whole particular estate, not merely of the interest of one among several who are interested in it.

7. An equitable interest of certain children in an estate during the life of a widow, the title being held by the executor, does not merge with a vested legal remainder in such children and others, with possession postponed until after the death of the widow.

8. There was no error in rejecting from evidence, when offered to show title, an application by an executor and an order to sell realty which this court had already held void.

Submitted July 18, 1906.—Decided March 1, 1907.

Equitable petition.    Before Judge Holden.    Wilkes superior court.    November 7, 1905.

The suit was by Martha S. Spratlin and others, children and representatives of children of Seaborn Callaway, deceased, for the recovery of certain land to which they claimed title as remaindermen under his will. The material parts of the will are: "Item 2. I wish all of my property kept together and used as I have used the same, during the life of my wife, she to have the privilege, with the consent of my executors, of giving off to my children, as they become of age or marry, such parts as she and they may select, to be accounted for in the final division, as shall be also what I have given heretofore to any of my children. Item 3. At the death of my wife, I wish my property to be equally divided among my children. Item 4. I wish my youngest children, not

educated, out of the proceeds of my property kept together as above described, to be educated in a plain and substantial manner, and the same not to be charged to them. Item 5. If any of my children die without leaving children, I wish the share given to them by this will to revert to my other children. . . Item 7. In the event of my wife marrying, I wish her to have an equal share of my estate set off to her, which shall at her death revert to my children under the above limitations." S. P. Callaway qualified as executor under the will in 1861, the year of the testator's death. The widow died in 1898. This suit was brought in 1903. The defendant claimed title under a deed made by the executor, in 1867, to Samuel Barnett, and by prescription. This deed was made in pursuance of a sale under an order of the judge of the superior court, passed in 1866, by which the executor was directed to sell all the property of the estate, except so much as might be set off for the widow's dower; which order the Supreme Court, in the case of *Callaway* v. *Irvin,* 123 *Ga.* 344, held to be void for want of jurisdiction of the subject-matter. The land in dispute was conveyed by Samuel Barnett to Gabriel Toombs, in 1868, and by Gabriel Toombs to William H. Toombs, the defendant, in 1872.

By consent of the parties, the case was submitted to the court for decision on the law and the facts without the intervention of a jury. The following facts were admitted: Seaborn Callaway's estate was kept together by the executor, S. P. Callaway, from the testator's death until November, 1866, and used as directed in items 2 and 4 of the will. None of it was set off to any of the children. In November, 1866, the widow married W. T. Bryant and had dower assigned to her in lands other than the land in dispute in this case. Since the date of his deed in 1872, the defendant has been in public, continuous, exclusive and peaceable possession of the land in dispute, under a claim of right. H. E. Spratlin, the husband of Martha Spratlin, did nothing to reduce the interest of his wife in the estate of Seaborn Callaway to his possession. None of the purchase-money of the land in dispute, from the executor's sale, was paid to any of the plaintiffs or their ancestors. Part of it was paid as attorney's fees, and the remaining part on debts of the estate. None of the plaintiffs or their ancestors were present at the sale. Seaborn Callaway used the property of his estate cultivated as a plantation for the sup-

port of himself and his family who resided with him. Two of his children (S. P. Callaway and Martha Spratlin) had married and moved off before his death. A duly authenticated copy from the minutes of the superior court, of the proceeding under which the executor's deed to Samuel Barnett was made, was offered in evidence by the defendant, and rejected by the court. The court rendered judgment in favor of the plaintiffs for six-sevenths interest in the premises in dispute, and mesne profits (which were proved). The defendant excepted, assigning error on this judgment, and on the exclusion of the proceeding under which the executor's deed was made.

*S. H. Hardeman, F. H. Cooley, I. T. Irvin Jr.,* and *William Wynne,* for plaintiff in error. *Samuel H. Sibley,* contra.

LUMPKIN, J. In 1867 the executor of Seaborn Callaway, deceased, sold certain land under an order or decree, which this court has since held was invalid. *Callaway* v. *Irvin, 123 Ga. 344.* The sale therefore conveyed no title. The deed, however, was good as color of title. The purchaser and those who held under him remained in possession. The remaindermen (children of Callaway and those standing in the place of deceased children) brought suit in 1903, their mother having died in 1898. The main defense now set up is prescription. If, under the will, the children were entitled to assert and recover on their title in remainder before the death of their mother, prescription had clearly ripened against them. Or if the title to the whole estate, both for life and in remainder, was in the executor and did not pass out of him, so that prescription ran against him as to the whole, then it had ripened. There is no evidence of actual fraud to prevent this result. The question, therefore, turns on the construction of the will of Callaway, the material parts of which appear in the statement of facts. By the second item the testator declared that "I wish all of my property kept together and used as I have used the same, during the life of my wife." It was agreed, that in his lifetime he had used the property of his estate, cultivated as a plantation for the support of himself and his family who resided with him; and that there were two of his children who had married and moved away, and did not reside with him. Construing this provision of the will in the light of the agreed statement of facts, it amounted to declaring that his property should be cul-

tivated as a plantation for the support of his wife and children residing on it, until her death. Here no title was specially devised to any one, but a use was declared to continue during the life of the wife. Unless this use was such as became executed, and passed into a legal estate in the beneficiaries, the executor appointed and qualified to carry out the will held the property, not the original title to the whole estate for administration, but as one authorized by the will to execute its terms in regard to such use during the time fixed by the will,—a species of testamentary trustee. A somewhat similar estate, but terminating by the terms of the will when the youngest child became of age, was created in *Vanzant* v. *Bigham,* 76 *Ga.* 759; and it was held that the children could not sue for the land while the trust estate continued. See also *Palmer* v. *Moore,* 82 *Ga.* 177; *Brannon* v. *Ober,* 106 *Ga.* 169. It is suggested that this created a life-estate in the wife, charged with the support of the children, and that the title to such life-estate was in her. She was given the privilege, "with the consent of my executors," to give off to the children as they should become of age or marry "such part as she and they may select," to be accounted for in the final division. This was a privilege, not a duty; and it involved the joint action of the wife and the executors; thus showing that the latter were not entirely dissociated from the property during the life-estate. This view is strengthened by the provision in the fourth item, that the testator desired his younger children to be educated in a plain, substantial manner out of the proceeds of the "property kept together as above described." The executor who qualified and was charged with the general carrying out of the will, in the absence of any specific appointment of a trustee, retained the title to this estate during the life of the wife, for the purposes therein specified. 18 Cyc. 207; *Smith* v. *McWhorter,* 123 *Ga.* 287, 291.

The remainder estate was not charged with any use, nor was there any trust for the remaindermen as such. In the third item of the will it was declared that "At the death of my wife, I wish my property to be equally divided among my children." This created a legal remainder, and the expression "equally divided" did not prevent it from being so. If any of the children died leaving no children, by the terms of the will the share given them was to "revert" to the other children. *Franke* v. *Berkner,* 67

*Ga.* 264; *Gay* v. *Gay,* 29 *Ga.* 549; *McDonald* v. *McCall,* 91 *Ga.* 304; *Bull* v. *Walker,* 71 *Ga.* 195.

The only doubt as to whether the executor may have retained the entire title arises from the provision in regard to educating the younger children from the "proceeds" of the property. This might possibly involve a sale of a portion of the estate, if necessary to carry it out. But taking the terms of the will together, and noticing that this provision was immediately followed by the statement that this was to be done from the proceeds of the property to be "kept together," the intention appears to have been for them to be educated from the income of the farming operations, rather than by sale. Whether, in case of necessity, a court of equity, upon proper pleadings and with proper parties, might have met the contingency of a deficient income, as in *Bullard* v. *Farrar,* 33 *Ga.* 621, need not be discussed.

The will before us thus created an estate to be kept together for the joint benefit of the wife and children living on the place, with a legal remainder over to the children after her death, unless this construction is modified or changed by item 7 of the will, which provided that "In the event of my wife marrying, I wish her to have an equal share of my estate set off to her, which shall at her death revert to my children under the above limitations." In the case of the remarrying of the widow, the setting off of an equal part of the estate would operate to segregate her interest, but would not destroy what remained of the use provided during her life. If the testator had meant that upon her marriage the provisions of item 2 should terminate, it would have been easy to say so. Her share was simply to be set apart to her, and the balance to be kept together as provided. The estate for life as to this balance would be a species of trust estate pur autre vie.

In *Grote* v. *Pace,* 71 *Ga.* 231, a will containing a provision somewhat similar to that now under consideration was involved. The actual question, however, decided was whether the wife had a vested interest, and whether at her death intestate her share passed to her heirs under the statute of distribution. It was held that it did so. There was no remarriage or taking of dower by her, and the question was not involved as to what effect her doing so would have had; nor as to the time of accrual of the right to recover possession, nor prescription. In the present case, as al-

ready noticed, the use declared was not equally for the wife and all the children; and there was also a provision for educating the younger children from the proceeds of the property without charging them .therefor, in the final distribution. When the widow took dower, one or more of these children appear to have been minors, one of them some ten years of age. So that if a division was then provided to take place, the clause as to education would become of no effect. So far as the time fixed in the will for distribution is concerned, if it was not upon the segregation of the wife's interest, it must have been upon her death, that being the only other time mentioned. It is not material to discuss whether prescription ripened against the estate for life, as there was no effort to recover pending it.

Did the executor who qualified assent to such legacy? In the agreed statement of facts it is said that "Seaborn Callaway's estate was kept together by the executor, S. P. Callaway, from the testator's death in 1861 till November, 1866, and used as directed in items two and four of testator's will." In 1866 the executor filed a petition to the judge of the superior court (of which a copy is attached to the pleadings) asking for direction, in which he alleged that the testator's wife "has been living on the place and under the will since the death of the testator." Here was sufficient evidence on the part of the executor of an assent to the legacy. It evinced an assent to the use specified in items 2 and 4 of the will, and an actual putting of them into operation. The assent to the life use also operated as an assent to the remainder. The widow married and elected to take dower instead of under the will. This destroyed or terminated any right in the land under the will, on her part; but her rejection or election could not destroy the balance of the particular estate, or affect the assent of the executor so far as the children were concerned. With the interest of the widow eliminated, there stood two estates: first, a particular estate in the executor, to hold the property together until the death of the widow, for certain purposes; and second, a vested remainder in the children, subject to be divested as to any who might die childless.

It is contended that the particular estate terminated when the widow took dower, and that the remainder was accelerated and took effect at once; that suit could have then been brought for pos-

session by the remaindermen, and therefore prescription then began to run.  24 Am. & Eng. Enc. Law (2d ed.), 418.  But from what has been said above, it will appear that the election of the widow to take dower did not destroy the whole of the particular estate, but only her part or interest in it.  To work an acceleration of a remainder, the particular estate as a whole must terminate.  And even then the acceleration results not from any arbitrary rule, but from the presumed intent of the testator, and will not take place if contrary to his expressed intent.  Moreover, in Georgia, a remainder will not fail for want of a particular estate. Civil Code, §3099.  This also disposes of the argument that the particular estate stood as if the testator had died intestate relatively to it.

It is further urged that when the widow elected to take dower, there was a merger of the particular estate and the remainder, and that prescription began to run from that time, or at least from the time when the youngest child became of age.  As has been seen, the will provided for the executor to keep the property together to be cultivated as a farm and used for a home for the children who lived there (not all the children).  There were also duties as to education.  Division was postponed until the death of the widow.  No creditors were complaining.  The children did not seek an earlier division.  There were clearly active duties till the youngest child became of age, and we think the language of the will as a whole left the title for the benefit of those interested in the life use, to be held by the executor till the widow died.  The interest of the children in the particular estate was equitable. Their remainder was legal.  There was no identity of persons interested in the two estates.  Hence there was no merger.  *Luquire* v. *Lee,* 121 *Ga.* 624.

Prescription not having ripened, there was no error on the part of the court, to whom, by agreement, the case was submitted for decision both on law and facts, in rendering judgment for the plaintiffs.  This court having held that the proceedings on the part of the executor in 1866 before the judge of the superior court, resulting in an order to sell, were void, they were properly rejected, when offered to show title.

*Judgment affirmed.  All the Justices concur, except Fish, C. J., absent.*