## BELT *et al. v.* GAY.

1. A testator devised to his wife the whole of his estate, real and personal, "during her widowhood, to be as absolutely under her control and management as it now is under my own, being perfectly willing to trust my children to her care and her bounty. In the event of the marriage of my said wife after my death, then I wish my property to be divided equally among her and my children who may be then in life, share and share alike, including the natural increase of the slaves, but not the income of the property during her widowhood, it being my express intention that she shall not be held to account for any income, or any alleged waste or mismanagement. Should my said wife remain in widowhood during the term of her natural life, she is to have the same control, management, and interest in the property as above specified until her death, at which time I will and direct that it be divided equally share and share alike among my then surviving children and the children (if any) of such as may have died before her, the latter to take per stirpes, to them and their heirs forever." Under this will the widow of the testator took an estate for life, or during her widowhood, without impeachment of waste, and at her death or marriage the remainder estate was to be divided equally among testator's children then in life and the children (if any) of such as may have died, the latter taking per stirpes.

2. The following language in the will: "After the payment of my just debts, I give . . to my wife . . during her widowhood, to be as absolutely under her control and management as it now is under my own, being perfectly willing to trust my children to her care and her bounty," did not confer on the widow of testator the power of sale of the fee in the property devised; and where it appears that the widow executed a fee-simple warranty deed, both as executrix of the last will and testament of the testator, and also in her individual capacity, such deed would convey only the life-estate of the widow.

3. Where a named executrix in a will, who was also a legatee under the will as life-tenant in all the property devised, executed a deed both in her representative and individual capacity, conveying all the real property devised, upon a valuable consideration, this act recognized a transferable interest in the life-tenant, and amounted to such an assent to the legacy by the executrix as authorized the life-tenant to convey her life-estate in the land.

4. The following language in a will: "I give, devise, and bequeath the whole of my estate, real and personal, to my wife, Elizabeth T. Belt, during her widowhood, to be as absolutely under her control and management as it now is under my own, being perfectly willing to trust my children to her care and her bounty," does not create a trust estate in the property devised for the remaindermen. Nor does the whole will, as set out in the opinion, when taken together, create such trust estate.

SEPTEMBER 18, 1914.

Equitable petition. Before Judge Rawlings. Jenkins superior court. March 14, 1913.

Ben L. Gay filed a petition against L. J. Belt and Inman Belt, to quiet and to remove a cloud on the title to 276 acres of land in the county of Jenkins (formerly Bulloch), and prayed that it be decreed and adjudged that he has a fee-simple title to the land, and that neither of the defendants has any right, title, or interest therein, and that they be enjoined from asserting by word or act, or in any way, any claim or right, title, or interest to the land in controversy under or by virtue of the will of L. Carlton Belt. The petition alleged substantially as follows: L. Carlton Belt, while a resident of Bulloch county, died in 1862, leaving a will executed on June 11, 1861, a copy of which is attached to the petition. (See the opinion, infra.) The will was duly probated and admitted to record. Elizabeth T. Belt, widow of the testator, qualified as executrix of the will, and is still living, and has never been discharged as executrix. On August 19, 1863, a deed was executed by her to Porter Fleming and Charles A. Rowland, conveying certain tracts of land described in the deed as containing 9,000 acres, more or less, situated in Bulloch and Emanuel counties. At that time the estate of L. Carlton Belt owed many debts, one of which was for about $20,000, held by Malcolm D. Jones against the estate, and was created by the testator for the purchase-money of said tracts of land in January, 1858, all of which debts were past due, and were secured by a mortgage upon the land, dated January 1, 1858, and recorded in the clerk's office of the superior court of Emanuel county on March 12, 1858. When the deed to Fleming and Rowland was executed, they paid to "said Elizabeth, executrix," $100,000 in cash, the consideration expressed in the deed; and out of the sum so paid the purchase-money debt to Malcolm D. Jones was paid, as well as the other debts against the estate. Upon payment of the $100,000 Fleming and Rowland went immediately into possession of the tracts of land; and they and those holding under them have since been continuously in the actual possession thereof. The deed was recorded on May 2, 1867, and a copy of it is attached to the petition. Rowland conveyed to Fleming his interest in the lands by deed executed on January 21, 1868, and recorded in Bulloch county. On December 13, 1870, Rowland conveyed to Matthew Williams a tract of land containing 276 acres, more or less, being a portion of the 9,000 acres hereinbefore referred to, by deed recorded on January 23, 1871. On December 31, 1870, Matthew Williams con-

veyed by deed the 276 acres of land, more or less, to Batt Gay; and on October 7, 1887, Batt Gay conveyed the 276 acres to the plaintiff, B. L. Gay, by deed recorded on March 16, 1892. Elizabeth T. Belt has remained a widow since the death of the testator. It is alleged, that, under the provisions of the will, she had the authority, right, and power, during her widowhood, to sell and convey the lands belonging to the estate of the testator, and thereby to divest all right, title, and interest of the estate and of all legatees; and that the deed executed and delivered by her to Fleming and Rowland conveyed the fee in the land to them. The only child of the testator or of Elizabeth T. Belt now living is Lloyd J. Belt, who is a resident of Jenkins county. No child of the testator or of Elizabeth T. Belt has died leaving a child or children, except C. T. Belt, who died leaving one child only, Inman Belt, who is now living and is a resident of Burke county. By reason of the facts hereinbefore set forth, neither Lloyd J. Belt nor Inman Belt has any right, title, or interest in the lands conveyed by Rowland and Fleming; and all of the grantees in the deeds mentioned have been in the bona fide, actual, adverse, public, continuous, exclusive, uninterrupted, and peaceable possession of the land in controversy for more than seven years. Upon her qualification as executrix, the title to the lands which belonged to the estate of the testator vested in Elizabeth T. Belt as executrix, and remained in her until she should assent to the legacy covering the lands, and she has never assented to the legacy covering the lands. All the children of testator at the time of his death were under the age of ten years. The executrix having never assented to the legacy covering the lands, the plaintiff and those under whom he claims have acquired a good prescriptive title as against Elizabeth T. Belt as executrix, and as against the estate of the testator, and as against Lloyd J. Belt and Inman Belt and all other persons; and at the death of Elizabeth T. Belt neither Lloyd J. Belt nor Inman Belt will have any right to recover the lands or any interest therein. Under the provisions of the will the title to the fee in the lands vested in Elizabeth T. Belt as trustee; and if she ever assented to the legacy covering the lands, the plaintiff and those under whom he claims have acquired a good prescriptive title to the lands as against Elizabeth T. Belt as trustee, and as against the estate of the testator, and as against Lloyd J. Belt and Inman Belt and all other persons; and at the death of Elizabeth T. Belt

Lloyd J. Belt and Inman Belt will have no right to recover the lands or any interest therein. Lloyd J. Belt and Inman Belt claim, under the provisions of the will, that they own, subject to the life-estate of Elizabeth T. Belt, all of the land described in the deed to Fleming and Rowland, and that at the death of Elizabeth T. Belt they will be entitled to possession of all of the land. Lloyd J. Belt and Inman Belt brought suit against one Simkins and others in Emanuel superior court, in 1900, to recover damages resulting from boxing timber on a part of the land referred to in the deed to Fleming and Rowland. The plaintiffs claimed the fee in the remainder interest in the land. A report of this case will be found in 113 *Ga.* 895 (39 S. E. 430). Lloyd J. Belt and Carlton Belt, the father of Inman Belt, brought suit in Bulloch superior court, in 1882, against Williams and Outcault, to recover a part of the land in question, claiming a right to recover under the will of L. Carlton Belt. This suit was dismissed for lack of prosecution, the plaintiffs therein being induced to believe, before the time of trial, that they could not recover the land during the life of Elizabeth T. Belt. The claim made by Lloyd J. Belt and Inman Belt is generally known to the public, and plaintiff Gay can not encumber or sell the land of which he is in possession, thus causing irreparable damage to him. Many years have already elapsed since the deed to Fleming and Rowland was made, without the judgment or order of any court; and the plaintiff apprehends that the evidence upon which he relies to show that he has a good title may be lost or impaired by further lapse of time, and that Lloyd J. Belt and Inman Belt will encumber or sell and convey the land of which he is in possession, which will further cloud his title.

The defendants filed general and special demurrers to the petition, which was amended to meet the special demurrers, after which the demurrers were renewed. The demurrers to the amended petition were overruled, and the defendants excepted.

*E. L. Brinson* and *P. W. Meldrim,* for plaintiffs in error.

*W. H. Barrett* and *H. M. Holden,* contra.

HILL, J. (After stating the foregoing facts.)

1. L. Carlton Belt executed his will on June 11, 1861, and died in 1862. The will was duly probated and admitted to record, and, so far as material here, was as follows: "After the payment of my just debts, I give, devise, and bequeath the whole of my estate, real

and personal, to my wife, Elizabeth T. Belt, during her widowhood, to be as absolutely under her control and management as it now is under my own, being perfectly willing to trust my children to her care and her bounty. In the event of the marriage of my said wife after my death, then I wish my property to be divided equally among her and my children who may then be in life, share and share alike, including the natural increase of the slaves, but not the income of the property during her widowhood, it being my express intention that she shall not be held to account for any income, or any alleged waste or mismanagement. Should my said wife remain in widowhood during the term of her natural life, she is to have the same control, management, and interest in the property as above specified until her death, at which time I will and direct that it be divided equally share and share alike among my then surviving children and the children (if any) of such as may have died before her, the latter to take per stirpes, to them and their heirs forever. With the full confidence that Elizabeth T., my dearly beloved wife, will execute this my last will and testament, I name her my executrix." (1) What estate did Mrs. Belt, the widow of the testator, take under the will? Did she take an estate for life, or during widowhood, with remainder over at her death to her and testator's children who might then be in life, and the children (if any) of such as may have died before the widow? Or did she take the fee? (2) Did the will confer on Mrs. Belt the power of sale of the land? (3) Was she created a trustee under the will for the remaindermen, and, if so, was the power of sale of the fee conferred on her by the will as such trustee? (4) Was there an assent to the legacy by Mrs. Belt? (5) Did Fleming and Rowland, and those who claim under them, acquire a good prescriptive title to the lands in controversy as against the remaindermen? These are the principal questions raised by the record.

Applying the well-recognized rules of construction to the present will, we reach the conclusion that it was the intention of the testator to devise to his widow an estate for life, or during her widowhood, without impeachment of waste, with remainder over at her death or marriage to his then surviving children, and the children of any who died before the widow, share and share alike, the latter taking per stirpes. The language of the will is clear and unambiguous, and says: "I give, devise, and bequeath the whole of my estate,

real and personal, to my wife, Elizabeth T. Belt, during her widow-hood. . . In the event of the marriage of my said wife after my death, then I wish my property to be divided equally among her and my children who may then be in life, share and share alike. . . Should my said wife remain in widowhood during the term of her natural life, she is to have the same control, management, and interest in the property as above specified *until her death, at which time* I will and direct that it be divided equally share and share alike among my then surviving children and the children (if any) of such as may have died before her, the latter to take per stirpes, to them and their heirs forever." The will upon its face clearly indicates an intent on the part of the testator to create a life-estate in the widow, if she remain as such, with the remainder over to his children. The language in the will that the property was "to be as absolutely under her control and management as it now is under my own" does not confer on the widow the right of alienation of the fee; for the testator had just preceded this expression with the language "during her widowhood," and followed it with the further language that he was "perfectly willing to trust my children to her care and her bounty." The testator was talking about the estate "during widowhood," and an absolute estate and one for widowhood are utterly irreconcilable. If it was the intention of the testator to devise an estate in fee to his wife, he would not have directed that his widow should have the control, management, and interest in the property "until her death, at which time" he directed that it be equally divided among his then surviving children. If the property was devised in fee, why should there be a direction as to the management and control of her own property "as above specified until her death"? The testator had just specified that the widow should not be held to account for "any income, or any alleged waste or mismanagement," all of which negatives the idea of a fee-simple estate. The will provided how the estate should be disposed of in the event of the marriage of Mrs. Belt, and how it should be disposed of at her death. If she remained a widow, she should have the management and control of the estate, without impeachment of waste, "until her death, at which time" the property should be divided equally, share and share alike, among the "then surviving children" of testator,—the "then" referring to the death of the life-tenant, Mrs. Belt. And

it is further provided that the children of such as may have died before her (the life-tenant) shall take per stirpes with the surviving children, "to them and their heirs forever." We think it is too plain for argument that the testator intended to devise an estate for life or during widowhood to his widow, with remainder over to his children living at the time of her death, and the children (if any) of those who may have died before the widow.

2. But it is insisted that the estate of the testator was in debt at the time of his death, and that the expression in the will, "After the payment of my just debts, I give . . to my wife, . . during her widowhood, to be as absolutely under her control and management as it now is under my own, being perfectly willing to trust my children to her care and her bounty," conferred on the widow of testator the power of sale of the fee in the property devised, and consequently that when she executed the deed to Fleming and Rowland she conveyed the fee-simple title to them. The deed recites that "Elizabeth T. Belt of the county of Bulloch, . . acting as well in my own right as in that of executrix of the last will and testament of Lloyd Carlton Belt, . . under the provisions and by the authority of said last will, and in consideration of the sum of $100,000 to me in hand paid at and before the execution thereof, by Porter Fleming and Charles A. Rowland, [grants the land described]. To have and to hold all and singular the lands above described, with all the rights, privileges, and appurtenances thereof, to the said Porter Fleming, Charles A. Rowland, and their heirs and assigns forever, in fee simple. And as executrix aforesaid I hereby covenant with the said Porter Fleming, Charles A. Rowland, and their heirs and assigns, to warrant and defend unto them forever the title to all and singular the above-bargained premises, so far as executors are bound by law to warrant, and not otherwise. And for myself, my heirs, executors, and administrators, I further covenant with the said Porter Fleming and Charles A. Rowland, their heirs and assigns, to warrant and defend unto them forever the title to all and singular the above-bargained premises against all claims of all and every person or persons whatever," etc.

In *Broach* v. *Kitchens,* 23 *Ga.* 515, a testator by will declared that "my beloved wife, Rachel Broach, shall have full power to dispose of a part or all of the above-described property, in any

manner she may think proper, and enjoy it in any way she may think fit, during her natural life, and after her death I wish it equally divided between my beloved children," etc. It was held "that Rachel Broach did not take a greater estate than for her life, nor power to dispose of a greater estate than for her life." In *Porter* v. *Thomas*, 23 *Ga.* 467, it was held that "By the words, 'I will and bequeath to my beloved wife, Mary, all my property, both real and personal, to be at her control during her natural life,' an estate for life is created in the wife, which is not enlarged into a fee by the words which follow, 'I further will and request, she makes such disposition of it as she thinks best.'" In *Rakestraw* v. *Rakestraw*, 70 *Ga.* 806, a testator devised his real estate to his wife, "to be held and controlled by my wife during her lifetime," and "my wife shall have full and entire control of all my effects, of whatever kind;" and it was held that the above language did not confer on the executrix (the wife of testator) a power of sale. Nor do we think that the language in the present will, "to be as absolutely under her control and management as it now is under my own, being perfectly willing to trust my children to her care and her bounty," is broad enough to confer on the executrix and wife a power of sale of the fee; and while the testator evidently intended to give his wife the absolute control of the property devised, for life, without holding her liable for waste, it is apparent, construing all the will together, that he intended to limit the title devised to his wife for life, or during widowhood, and at her death it was to go to his children as expressed in the will. Without any power in the will, or any valid order of the court of ordinary or other court, authorizing the sale of the property devised, a deed from the executrix would be invalid, and would not convey the fee to the land; and if a valid deed was executed in her individual capacity, it would convey only the life-estate of the widow therein.

3. Was there an assent to the legacy by Mrs. Belt as executrix? The deed executed by Mrs. Belt to Fleming and Rowland recites: "acting as well in my own right as in that of executrix of the last will and testament of Lloyd Carlton Belt," etc.; and the deed is signed individually and as executrix by Elizabeth T. Belt. A life-tenant has a right to convey the life-estate; and it was said by Judge Stephens in *Bigelow* v. *Young*, 30 *Ga.* 121, 126 (5), that even if one who was executrix had no right to pledge property, the

very act of pledging at all constituted an assent to the legacy. *Vanzant* v. *Bigham,* 76 *Ga.* 759. In *Thursby* v. *Myers,* 57 *Ga.* 156, it was said: "When the devisee and the executrix are the same person, and the demise is in the name of the devisee, the assent of the executrix to the legacy will be presumed." But it is argued that it is a question for the jury to determine whether the executrix had assented to the legacy and had delivered the property to the legatee, —citing *Day* v. *Cox,* 130 *Ga.* 537 (61 S. E. 121); *Vanzant* v. *Bigham,* supra. The petition alleged that "upon the qualification of Elizabeth T. Belt as executrix of the will of her husband, L. Carlton Belt, the title to said land, which belonged to said estate of said testator, vested in said Elizabeth T. Belt, as aforesaid, and remained in her until she should assent to the legacy covering said land; and said Elizabeth T. Belt has never assented to said legacy covering said lands." When the executrix admits in the conveyance itself, as above recited, that the life-tenant in her individual right has the right to convey her interest, does it not as matter of law amount to an assent to the legacy? We think so. These recitals in the deed were set out in an exhibit attached to the petition, and made a part of it. And if the law makes the facts alleged an assent, a denial of assent can not change it. In law the conveyance amounted to this: it recognized a transferable interest in the life-tenant by the executrix, and sought by joining the executrix as such and the life-tenant to convey the fee. Otherwise there was nothing for the life-tenant to convey. We think that this joining of the executrix and life-tenant in the deed was such an assent to the legacy as that the life-tenant had the right to convey whatever estate she had in the lands in controversy, and that her estate under the will, as already held, was a life-estate. And an assent to the life-estate operated also as an assent to the remainder-estate. *Toombs* v. *Spratlin,* 127 *Ga.* 766 (57 S. E. 59).

4. Was the widow created a trustee under the will for the remaindermen? If this question is answered in the negative, it is useless to pursue the inquiry further, as to whether a power of sale was conferred on the widow as trustee. We think it is quite clear from reading the first item of the will that the testator did not intend to create a trust estate for the remaindermen. His language is as follows: "After the payment of my just debts, I give, devise, and bequeath the whole of my estate, real and personal, to my wife,

Elizabeth T. Belt, during her widowhood, to be as absolutely under her control and management as it now is under my own, being perfectly willing to trust my children to her care and her bounty." It is argued that this language creates a trust, and that all of the property of the testator was vested in Mrs. Belt as trustee; and, further, that if the title to the property was in her as trustee, and a good prescriptive title is acquired against the trustee, a like good prescriptive title exists against the beneficiaries of the trust. The mere use of the word "trust" in this item of the will does not, without more, create a trust estate. The testator evidently used the word as employed in the will in the sense of confidence. He had provided for his wife a life-estate, to be used by her without regard to waste, and he had confidence that she would out of the rents and profits of the life-estate, which was probably more than necessary for her own maintenance and support, generously bestow a portion of it on his children. But, let it be borne in mind, he had also provided for the children as remaindermen, whether they received any part of the life-estate or not. The conclusion at which we arrive is, that Mrs. Belt was not the trustee of the remaindermen, and consequently no prescription would run against her as trustee for them; and Fleming and Rowland, and those who hold under them, did not acquire a good prescriptive title to the lands in controversy as against the remaindermen; and on the death of the life-tenant, Mrs. Belt, if she remains a widow, the title to the land in controversy vests in the defendants. See *Howard* v. *Henderson,* ante, 1 (82 S. E. 292).

5. The petition did not set forth a cause of action, and the court erred in not sustaining the general demurrer.

*Judgment reversed. All the Justices concur, except Evans, P. J., disqualified.*