## TAYLOR *et al.* *v.* PHILLIPS *et al.*

Where a grantor conveys land to a trustee "to suffer and permit" the grantor and his family "to use and occupy the same as a residence, or to rent out the same during the natural life of" the grantor and his wife, "and, at the death of the survivor, to be equally divided between the children of" the grantor, "living at the time of the death of the said survivor, the representatives of a child taking the share to which its deceased parent would have been entitled," and the deed directs that the trustee "shall, upon the written request of" the wife of the grantor, "sell and convey the said lots and premises to such person and on such terms as she may direct, and the receipt of the" wife "for the said purchase-money shall be a complete discharge to the said" trustee "of all liability for the same," the power' so conferred upon the trustee contemplates only a bona fide and valid sale upon a sufficient valuable consideration, and does not authorize the trustee to make, at the written request of the wife, a sale or conveyance of the land as a gift, or upon a nominal consideration.

No. 731.. MARCH 12, 1918.

Equitable petition. Before Judge Meldrim. Chatham superior court. November 28, 1917.

In 1857 a grantor conveyed two city lots of land to a trustee "to suffer and permit" the grantor and his family "to use and occupy the same as a residence, or to rent out the same during the natural life of" the grantor and his wife, "and, at the death of the survivor, to be equally divided between the children of" the grantor, "living. at the time of the death of said survivor, the representatives of a child taking the share to which its deceased parent would have been entitled; and upon this further and other trust," that the named trustee "shall, upon the written request of" the wife of the grantor, "sell and convey the said lots and premises to such person and on such terms as she may direct, and the receipt of the" wife "for the said purchase-money shall be a complete discharge to the said" trustee "of all liability for the same." The trustee died, and no successor was appointed. The grantor died and left the widow and three children. The widow died, leaving in life one daughter and the children of a deceased son and children of a deceased daughter of herself and the grantor. Prior to her death the widow, in 1914, executed a warranty deed to the children of the deceased daughter, purporting to convey a designated part of one of the lots in fee simple, subject to her right to the rents and profits therefrom during her life. This deed recited: "Whereas the daughter, Georgina B. Phillips, of said party of the

first part, during many years to the time of her death, devoted herself faithfully and assiduously in every respect to the affairs, comfort, and welfare of said party of the first part, and made personal sacrifices for said party of the first part and for her interests, and the granddaughters, Henrietta Phillips, Georgina L. Phillips, and Fanny Y. Phillips, since their mother's death, have also solicitously, affectionately, and devotedly managed the affairs, kept the house, and, unmindful of their own pleasures, have made sacrifices to advance the ease, comfort, and happiness of the declining years of said party of the first part, thereby earning a degree of gratitude said party of the first part feels she can but feebly express and insufficiently repay: Now, therefore, this indenture witnesseth, that for and in consideration of the premises, and in further consideration of the love and affection of said party of the first part for said parties of the second part, and the desire and determination of said party of the first part to recognize and, in a slight degree, to reward and compensate in part the said parties of the second part for the continuous devotion and faithful affection they have displayed, as aforesaid, as well as for other good and valuable considerations, has granted," etc.

In 1917 the grantees in the last-named deed instituted an action against the surviving daughter and the children of the deceased son of the grantor in the first-mentioned deed, alleging what has just been stated, and that the deed so executed by the widow amounted to a defective exercise of the power conferred on her in the first deed, and was sufficient to make it the duty of the trustee or his successors to make title to the plaintiffs to that part of the property specified, on the basis of the consideration expressed in the deed to them. It was prayed (*a*) that the "court remedy said defective execution of said power;" (*b*) that it appoint a successor to the trustee, and direct such succeeding trustee to make title to petitioners to the portion of the property described in the deed to them; (*c*) for process and general relief. The court overruled a general demurrer to the petition, and the defendants excepted.

*Osborne, Lawrence & Abrahams,* for plaintiffs in error.

*Garrard & Gazan,* contra.

ATKINSON, J. Upon the controlling question the case is quite similar to Garland *v.* Smith, 164 Mo. 1 (64 S. W. 188). In that

case certain land was conveyed by James Smith to a trustee for the use of the grantor's wife, Mrs. Persis Smith, for life, "and the said Persis shall have power to sell, mortgage, incumber, lease, or otherwise dispose of the same to such person or persons and for such uses and purposes as she may at any time, by writing by her signed, direct and appoint," and the trustee was directed to execute all writings necessary to carry into effect this power when directed by her. If not so disposed of, the trustee was directed to convey to others at her death. The wife executed a warranty deed of the land to the defendant, which recited a consideration of $10, but which was shown to have been without consideration; and also devised the same land to him in her will. It was held that the defendant acquired no title to the remainder under either the deed or the will. In the course of the opinion it was said: "What estate did Mrs. Persis Smith acquire by the trust deed of James Smith of March 13, 1865, and what were the purposes, and the nature, extent, and scope of the power of appointment conferred upon her by said deed? Did the conveyance by deed of gift, of June 26, 1888, constitute a valid execution of her power of appointment? Could that power of appointment be executed by last will? As to the estates created by the deed of James Smith, we conceive there can be no doubt. By it a legal title in fee simple was conveyed to Edward A. Filley, the trustee therein named. An equitable life-estate to Mrs. Persis Smith, his wife, with a power of appointment superadded, and a contingent remainder to the issue of Mrs. Persis Smith living at her death, and in default of such issue a contingent remainder to the heirs of Charles Garland. The power of disposal annexed to the life-estate of Mrs. Smith did not enlarge her life-estate into an equitable fee simple. Rubey v. Barnett, 12 Mo. 3 [49 Am. D. 112]; Gregory v. Cowgill, 19 Mo. 415; Lewis v. Pitman, 101 Mo. 281 [14 S. W. 52]. Having ascertained the nature and extent of the estates created, we are brought to an examination of the nature and purposes of the power of appointment. It is well to keep in view, first, the terms of the power as expressed by the grantor; and, secondly, the circumstances attending the execution of the deed. After the grant of the estate for life for her sole and separate use and benefit, the deed proceeds: 'And the said Persis Smith shall have power to sell, mortgage, incumber, lease, or otherwise dispose of the same to such person or

persons and for such uses and purposes as she may at any time, by writing by her signed, direct and appoint,' and the trustee is directed to execute the writings necessary to carry into effect this power whenever directed by her. Any person who is competent to dispose of an estate of his own may execute a power over land. While not necessary to go into the learning on the subject of the powers to any great length, it is well enough to advert to some of the general principles laid down in the cases and treatises on the subject. Thus, Washburn on Real Property (5th ed.), vol. 2, p. 691, says: 'There is, besides, a subdivision of the class of powers which are held by a donee who has some estate in the land, into powers appendant and powers in gross. Powers appendant are such as the donee is authorized to execute out of the estate limited to him, and depend for their validity upon the estate which is in him. He is thereby able to create an estate which will attach on an interest actually vested in him. The illustration given by Mr. Sugden is of a life-estate limited to a man with a power to grant leases in possession, which must in every case have its operation out of his estate during his life. Powers in gross are such as one who has an estate in land has to create such estate only as will not attach on the interest limited to him, or to take effect out of his own interest. The illustration of Hale, C. B., of such a power, is where a tenant for life has a power to create an estate which is not to begin until his own ends. It is a power in gross, because the estate for life has no concern in it.' Applying these principles to the power conferred upon Mrs. Persis Smith, it was appendant, so far as her right to lease, convey, or incumber her life-estate; but in so far as it authorized her to appoint the fee, to begin after her life-estate, it was a power in gross. Says the same learned author (vol. 2, p. 707): 'When the mode of executing a power comes to be considered, it will be found that, in order to the execution being valid, the law is exceedingly strict in requiring a precise compliance with the direction of the donor as expressed in his deed or will;' and particularly is this true as to a power to cut out remaindermen. . . A fortiori it is not a power to give away the property conveyed. But, argues the learned counsel for defendant, a general power to appoint in writing may be executed by deed or will; and that the words of the deed conferred a general power, and are not restricted to a conveyance of the property for value.

In our own view, this is a crucial test in this case. In what manner and for what purposes was this power conferred upon Mrs. Smith? Did the grantor intend that his wife should give away this estate which he had set apart first to support and maintain her during her life, and after her death for the benefit of the heirs of Charles Garland? By a process of inclusion and exclusion, we reach the conclusion that he intended to exclude George Smith, the defendant, because he expressly limits the first remainder to the issue, the heirs of the body of his wife, and, upon failure of such living heirs at her death, then to the heirs of Charles Garland. It is also obvious that he had in view a provision for the benefit of his wife, and, lest misfortune should overtake her, he gave her the power to sell, mortgage, incumber, or otherwise dispose of the home to raise funds for her support. Counsel for defendant states the purpose of James Smith thus: 'The reasons which, according to Mrs. James Smith, induced him to execute this deed of trust, were that he was actively engaged in business, was a director in the Boatmen's Savings Institution, and had become a surety for his friends on many bonds and other obligations, and he wished to settle the homestead property in trust for his wife while he was yet in a solvent condition.' While this is a fair statement of the evidence as far as it goes, Mr. Filley adds that he said 'he wished to have the property held in trust for Mrs. Smith and her heirs.' We think, that, to properly construe the power of appointment, not only the words of the deed must be looked to, but the circumstances surrounding the grantor, and the fact that a remainder had been created for the heirs of Charles Garland. When this is done, it seems to us that the construction which most harmonizes with the intention of the grantor, and at the same time subserves and preserves the rights of all the objects of his bounty, is that the power of appointment was appendant to Mrs. Smith's life-estate, thereby enabling her, in the event of his insolvency, to sell the property or mortgage or incumber it for her support; but it was not his intention to permit her to give it away, and thus possibly leave her homeless in her old age, nor to permit her to give it away to the destruction of the remainder he had granted to the heirs of Charles Garland. It is suggested, however, that Mrs. Smith might have, under this power, sold the land for a valuable consideration, and given the proceeds to defendant George Smith, her adopted son.

If this be conceded, still it does not meet the contention that she had no power to give away this property under the terms of this deed. In addition to the authorities cited in Price *v.* Courtney, 87 Mo. 387 [56 Am. R. 453], we regard the decision in Ferry *v.* Laible, 31 N. J. Eq. 566, as greatly strengthening the view of this court in Price *v.* Courtney. In that case it was held that the rule was well established, that, 'when one of several methods of executing a power is clearly prescribed by the language of the power, the donee is not at liberty to adopt another, for by prescribing one the others are negatived.' But, again, it is asserted that the phrase 'or otherwise dispose of' was sufficient to confer an absolute and untrammeled power of disposition, even if the words, 'sell, mortgage, and incumber,' were not sufficient to authorize a gift of the lot to defendant. On the other hand, plaintiff maintains that such general words as these, used as they are after specific terms, must be confined to things ejusdem generis with those preceding them. We are quite clear that the phrase referred to did not enlarge the power of appointmnt so as to include a gift of this property. In County of Johnson *v.* Wood, 84 Mo. loc. cit. 509, it was ruled that 'a general sweeping clause in a deed, which is indefinite in its character, will be restricted and limited to estates and things of the same nature and description as those previously mentioned.' We hold that a voluntary gift of this lot was not authorized by the power conferred upon Mrs. Smith, and defendant was chargeable with notice of her want of power to give him the lot, and that therefore he took no title by the deed of June 26, 1888. Fleming *v.* Mills, 182 Ill. 464 [55 N. E. 373]; Sires *v.* Sires, 43 So. Car. 266 [21 S. E. 115]; Young *v.* Ins. Co., 101 Tenn. 311 [47 S. W. 428]; Robeson *v.* Shotwell, 55 N. J. Eq. 318 [36 Atl. 780]; Price *v.* Bassett, 168 Mass. 598 [47 N. E. 243]."

In the case of Stocker *v.* Foster, 178 Mass. 591 (60 N. E. 407), it was held, that where a testatrix devised her property to her husband for life, "with full power to sell and dispose of any and every portion thereof, whenever in his judgment he may deem it conducive to his comfort," with remainder to plaintiff in fee, a conveyance by the husband without consideration, and for the purpose of transferring the property so that it would descend to his children, did not constitute a valid execution of the power. In the course of the opinion it was said: "The devise in the second clause

of the will of Mary Foster did not give to William A. Foster, her husband, an estate in fee, but an estate for life, coupled with a power to 'sell and dispose of' any part of the estate during his lifetime, 'whenever in his judgment he may deem it conducive to his comfort.' Kent *v.* Morrison, 153 Mass. 137 [26 N. E. 427, 10 L. R. A. 756, 25 Am. St. R. 616]; Collins *v.* Wickwire, 162 Mass. 143 [38 N. E. 365]. We have first to deal with the question as to the nature of the power. It is contended by the demandant, on the one hand, that the power authorized Foster to sell or otherwise dispose of the estate only for a valuable consideration, and only when he deemed such sale or disposal to be conducive to his comfort, by enabling him by means of such a consideration to supply his present or prospective needs. The tenants, on the other hand, contend that the power authorized Foster to sell and dispose of the property whenever such sale or disposition would have a tendency to promote his happiness or peace of mind, with or without regard to his present or prospective needs, and with or without a valuable consideration. The testatrix left no issue; and since the will, executed but a few months before her death, makes no mention of issue, we conclude that there were none at that time. While making her will, she had in her mind her husband, her sisters Susan and Martha, her nieces Hattie and Nancy, and the demandant, as the persons among whom her property should be distributed. She begins with the husband, giving him a life-estate, coupled with a power to dispose of the real estate during his lifetime. She then gives a life-estate in the real estate, after the death of the husband, to her two sisters, and the survivor of them, with remainder in fee to the demandant. All these estates, including that devised to the husband, may be abridged or defeated by the execution of the power given to him to dispose of the land. He is empowered to sell and dispose of the whole or any part of the real estate, 'whenever in his judgment he may deem it conducive to his comfort.' The testatrix is speaking of property, and of property which she does not feel inclined to give in fee to her husband. It is her wish that, unless the sale and disposition of it shall in his judgment conduce to his comfort, it shall go to the other proposed objects of her bounty. She is speaking of that kind of comfort which arises from the sale and disposition of real estate. She is not speaking of heirlooms, nor does it appear that the real estate had any asso-

ciations connected with it which would make its sale or disposition anything more than a mere matter of trade and the amount which could be obtained for it. The idea of sale, and of the disposition consequent thereupon, is the predominant idea in the mind of the testatrix. Under these circumstances we can have no doubt that by the words, 'sell and dispose of,' is meant a disposition by sale, and not by gift; and that the 'comfort' to which such a sale would 'conduce' is the physical comfort to be derived from the actual or potential application of the proceeds of such a disposition to the present or prospective physical comfort or support of the husband. There may be also, to a limited extent, a mental element in the comfort consisting of that peace of mind which comes from a knowledge or belief that, by reason of a change in the property resulting from a disposition by sale, it will be rendered more easily available for the physical comfort or support of the husband. See Forman v. Whitney, 2 Keyes (N. Y.) [2 Abb. App. Dec.], 165. But all along the language used by the testatrix seems clearly to refer to such comfort as can be attained by the application of the proceeds of the property to the reasonable needs of the life of the donee of the power, and not to that peace of mind which arises from a knowledge that the property has been so disposed of as to contribute to the enjoyment and support of others. The comfort experienced by the philanthropist in giving away his property, whether to relatives, friends, or strangers, does not seem to us to be the kind of comfort which the testatrix had in mind when she was engaged in making this will. The view for which the tenant contends seems to us a forced and unnatural construction of the language of the will, and inconsistent with the general nature of the business in which the testatrix was engaged while making it. It follows that in giving the third, fourth, fifth, seventh, and eighth rulings requested by the demandant, and in refusing to rule, as requested by the tenants, that the power given in the will was in effect an absolute and unlimited power to sell and dispose at the discretion of the donee of the power, the court made no error in law."

In Sires *v.* Sires, 43 S. C. 266 (21 S. E. 115), it was held, that in a will devising the testator's estate to his wife for life or widowhood, the income therefrom to be received to her own use and for the support of their minor children, a power to sell and convey all

or any part of the estate, "in such manner, upon such terms and conditions, and to such person or persons as she may deem best," and "to invest the proceeds of any such sale in other property," and a further power, in and by her last will, to dispose of, limit, and appoint the estate or the proceeds of sale of any part of it, which proceeds, if she should die without executing such will, were to be divided among their children living at the time of her death, did not empower her to convey the property upon a nominal consideration or by way of gift. In the course of the opinion it was said: "A gift of the property would have defeated one of the objects of the testator's will, which was that the income from the property should not only be used for the benefit of the widow, but also for the maintenance, support, and education of the children therein described. The will shows also that the testator contemplated that either the original property, or that purchased with the proceeds derived from a sale of the original property, would be in the possession of the life-tenant, Martha M. Sires, at the time of her death; and, in case she failed to dispose of it by her last will and testament, the testator provided that it should descend to the children described in his will. The next question for consideration is whether the land was sold or conveyed as a gift. The deed recites a consideration of three dollars (the receipt of which is therein acknowledged). The presiding judge in his decree says: 'Mrs. Sires had no power to sell for a mere nominal consideration, which seems not to have been paid, and the evidence is not sufficient to convince me that there was any other consideration for the deed. If, indeed, any services were rendered to her by her son, Samuel W. Sires, and for which any payment was expected by either of them, the testimony fails sufficiently to show that these services were the true consideration of the deed.' The circuit judge heard the witnesses testify; therefore his opportunities for judging as to their credibility were greater than those possessed by this court. After a careful reading of the testimony, we agree with the circuit judge in his finding of fact as to the consideration upon which the property was conveyed. The consideration of three dollars expressed in the deed is nominal and formal. The property was therefore conveyed as a gift. The next question that naturally suggests itself is as to the effect of such conveyance as a gift. A sale implies a consideration; and when the power is given to sell,

49

and the person conveys without a consideration or one merely nominal, this constitutes a breach of the trust, and none of the participants therein can take anything by such conveyance. To sustain the position that a power to sell is not fulfilled by the conveyance of the property as a gift, it is only necessary to refer to a few authorities. Rabb *v.* Flenniken, 29 S. C. 278 [7 S. E. 597]; Park's Adm'r *v.* Am. Home Missionary Society, 62 Vt. 19 [20 Atl. 107]; Fronty *v.* Fronty, Bail. Eq. 517."

The reasoning employed in the cases cited is sound and is applicable to the case at hand. The trust deed is to be considered in its entirety, and effect is to be given to the intention of the maker as reflected from the language of the instrument. The deed clearly created life-estates for the grantor and his wife, with vested remainder, after the death of the survivor, in such children of the grantor as might be living at the time of the death of the survivor, and to the representatives of the children who may have predeceased the survivor. The remainder so created was subject to be divested only under circumstances stated in the paper, namely, by sale by the trustee, at the written request of the wife. The sale contemplated was an actual bona fide sale made upon a valuable consideration. It was not contemplated that the life-estates reserved to the grantor and his wife, or the vested remainder, should be defeated by a mere gift, or a conveyance upon a nominal valuable consideration. If it were held that the wife could direct the trustee to make a mere voluntary deed or gift of the property, such a construction would have put it in the power of the wife to so dispose of the property at any time after execution of the trust deed, thereby putting it beyond the enjoyment of the grantor in whom there was reserved a life-estate by the trust deed, as well as beyond the enjoyment of the wife for whose support the grantor was responsible, and lastly, beyond the reach of the remaindermen for whom provision was made by the deed. Under no fair construction could it be held that the grantor contemplated any such disposition. After the death of both the trustee and the grantor, the widow, having only a life-estate, undertook to convey the land in dispute by a deed, the substance of which is set forth in the statement of facts. The language of the deed indicates that she did not deal with the property as a trust estate, or contemplate the execution of a power, but

purported to convey it as her individual estate. In so far as the deed refers to consideration, its language is set forth in the statement of facts. The inference to be drawn from this language is that the maker, feeling that she was under a strong moral obligation to those granddaughters who were the grantees named in her deed, desired to leave them the property after her death. It was not upon any legal obligation as compensation for their services; because such services as had been rendered had been voluntarily rendered on account of affection in which she had been held by her deceased daughter and granddaughters. The grantor uses the words, "other valuable consideration," but these are to be construed (applying the principle of ejusdem generis) in connection with the other language used by her, which considered together manifests an intent to make a gift rather than a deed upon a valuable consideration. A deed executed under these circumstances is not sufficient as a basis for requiring the appointment of a trustee, and the execution of a deed by him to the grantees under the power contained in the original trust deed.

The demurrer to the petition should have been sustained.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*